# Yentzer v. Taylor Wine Company, Inc.

*Edwin W. Tompkins, III,* and *Tompkins & Tompkins,* for plaintiff.

*A. Grant Walker,* for defendant.

TRAMBLEY, P.J., January 13, 1961.—This case is before the court on defendant's motion to quash the service of process and dismiss the action for the following reasons:

"1. Taylor Wine Company, Incorporated, a corporation, is a foreign corporation with its office and principle place of business at Hammondsport, New York, and is not registered to do business in the Commonwealth of Pennsylvania.

"2. Sales of its product in the Commonwealth of Pennsylvania are made to the Pennsylvania Liquor Control Board and are shipped F.O.B. Plant of the defendant at Hammondsport, New York, to the warehouses of the Pennsylvania Liquor Control Board as directed by that Board and, therefore, defendant does not maintain an office or place of business or warehouse within the Commonwealth of Pennsylvania.

"3. Defendant does not come within the meaning of the Act of November 10, 1959 (section 1011, new subsection c 15 PS §2852.1011, Act number 502) for the foregoing reasons: . . ."

Defendant appeared specially only to present this motion.

It appears from pleadings, argument, evidence and briefs in this case that defendant is a foreign unregistered corporation, as above stated, and that plaintiff is an individual who, on June 13, 1959, was in the employe of Wilma Galloway, trading and doing business as Warner Hotel in Emporium. On June 12, 1959, in his capacity as manager of the Hotel Warner, plaintiff purchased from the State Liquor Store in Emporium, Cameron County, four bottles of champagne bearing the label of defendant which indicated that the same was fermented in the bottle and was produced and bottled by defendant. This champagne was purchased for storing, handling, opening and dispensing to patrons attending a wedding breakfast to be held at the Hotel Warner on June 13, 1959.

At about 10:30 a.m., (E.D.S.T.), on June 13, 1959, plaintiff, as manager aforesaid, while making preparations for the wedding breakfast, was struck in the right eye by a plaster cap affixed to one of the bottles of champagne which resulted in the eventual loss of plaintiff's right eye. It does not appear from the pleadings, argument or briefs whether or not plaintiff had the bottle in his hand or hands, or whether it was in the hand or hands of some other person or was elsewhere when the cap was ejected.

Taylor Wine Company, Inc., has its principle office in Hammondsport, N. Y., and shipped this consignment of champagne to the Pennsylvania Liquor Control Board, its only customer in Pennsylvania, F. O. B. Hammondsport, N. Y.

The manner in which a foreign corporation can sell wines and liquors to the Pennsylvania Liquor Control Board Stores is controlled by the regulations of the Pennsylvania Liquor Control Board. According to those regulations, the seller must hold a Pennsylvania manufacturer's or importer's license or a vendor permit before it can sell its product to a Pennsylvania distributor: Regulation 129, chap. 1, B, sec. 129.01; regulation 129, chap. 1, sec. 129.02 B. The holder of such a permit may employ agents to solicit and promote the sale of its product in Pennsylvania but not until they have been registered with the Pennsylvania Liquor Control Board, the required fee paid and a corporate surety bond in the sum of $500 filed: Regulation 129, chap. 1, sec. 129.02 A and C and sec. 129.03. The company may request the cancellation of the agent's registration at any time, but the board has the discretion in deciding whether or not such agent's registration should be cancelled: Ibid. 129.04.

The activities of such agents are further limited in section 129.05 which reads as follows:

"Section 491, sub-section 14, and Section 493, sub-sections 22, 23 and 24, of the Liquor Code, provide that certain practices in connection with the sale of liquor shall be unlawful. Although not limiting the scope of the statutory provisions, the following practices are in violation of one or more of these sections:

"A. To grant, allow, pay or rebate any cash, merchandise or any other thing or value, to any licensee, their servants, agents, or employees, including the purchase of merchandise at retail for delivery to a licensee; to grant, allow or pay anything of value to a licensee, their agents, or employes, for the privilege of advertising display; to purchase drinks 'for the house' to induce the purchase of merchandise.

"B. To visit State Stores or warehouses or directly or indirectly contact the store or warehouse employes

for the purpose of promoting the sales of merchandise.

"C. To solicit or induce PLCB personnel to promote the sale of particular brands.

"D. To apply at State Stores, or of store personnel, for information as to Stores' merchandise inventories.

"E. To furnish, entertainment or to offer gratuities to PLCB personnel.

"F. To grant, allow or pay money or anything of substantial value (this includes tips) to licensees, their servants, agents or employes, to induce the sale of merchandise.

"G. To represent, expressly or by implication, that he is connected with any department of the State Government or has any influence therewith."

Section 129.10 provides for the issuance of order books by the Pennsylvania Liquor Control Board to the holder of a vendor's license at the price of one dollar for each book furnished and prescribes the manner in which such orders are to be prepared. All such orders taken from licensees must be presented and filed with the State Liquor Stores: Regulation 129.12. This regulation also provides that no licensed vendor, or his or its registered agents, shall obtain or accept an order from either a licensee or other persons under this regulation unless there is obtained from the licensee or other persons at the same time and delivered to the State Liquor Store involved, a sum not less than the amount required by the board for deposit on special order sales under the liquor code, now 25 percent.

State Liquor Stores may, at the time of receiving the agent's order and/or the releasing of the liquor at such stores to the purchaser thereof, accept checks of licensees in payment. This section also prohibits the licensed vendor or his registered agent from extending credit to a licensee or any other person and also pre-

scribes that the stores shall not release liquors purchased under the regulation without having previously collected from the person for whom the liquors were purchased the balance of the full purchase price money.

Section 129.17 of the regulations provides: "Licensed vendors and their registered agents shall, under this regulation, for all intents and purposes except as herein restricted, be considered the agents of the persons from whom they obtained special liquor orders. Neither the Commonwealth nor the Pennsylvania Liquor Control Board will be responsible for the proper disposition of any moneys collected from a licensee or other person by a licensed vendor or his agent. Under no circumstances shall the Commonwealth or the Pennsylvania Liquor Control Board be responsible for any actions of a licensed vendor or his agents under the regulation."

It is not alleged in the complaint that defendant made more than the sale in question here but by inference from the certified copies of applications for vendor permits, issuance of same to defendant on January 1, 1960, and the registration of 22 agents in Pennsylvania, it can reasonably be assumed that many more sales were made in Pennsylvania. Plaintiff, however, in its brief states, and the exhibits offered show, that there are 22 registered agents of defendant in Pennsylvania and that 12 of them state in their application that they work for no other vendor but defendant. The plaintiff offered in evidence photostatic copy of approved application for vendor's or sales permit, copy of vendor permit, serial number 51, issued January 1, 1960, expiring December 31, 1960, designated as VP 2, issued to the Taylor Wine Company, Inc., whose address was given as Apartment 108B, Thomas Wynne Apartments, 200 North Wynnewood Avenue, Wynnewood, Montgomery County, and photostatic

copies of 22 approved applications for registration of agents and renewals for additional registration of agents from various parts of Pennsylvania. The application for this vendor permit lists all of the officers, directors and stockholders of Taylor Wine Company, Inc., none of whom are residents of the State of Pennsylvania.

Defendant objected to the admission of these various papers in evidence, but the court overruled the objection and admitted them.

It is our opinion that these papers are relevant in this case to the extent that they may assist in determining whether or not defendant was doing business in Pennsylvania in that they set forth certain restrictions on the agents of the defendant in making sales in Pennsylvania.

Plaintiff in his supplemental brief points out six things which the holder of a vendor's permit or a registered agent does or may do under the regulations of the Pennsylvania Liquor Control Board as follows:

1. The Taylor Wine Company, Inc., did apply for a vendor's permit in Pennsylvania, application being made in the name of the company itself and by and under the authority of a corporate resolution which is made part of the application;

2. The office where all records of the company concerning its business activities in Pennsylvania under the vendor's permit is apartment 108B, Thomas Wynne Apartments, 200 North Wynnewood Avenue, Wynnewood, Montgomery County;

3. That the vendor does have authority under the permit to employ agents to promote the sale of its products in Pennsylvania;

4. That pursuant to the vendor's permit, there are 22 registered agents whose job is the promotion of defendant's products within Pennsylvania.

5. Twelve of the 22 agents state in their applications that they work for no other vendor except Taylor Wine Company;

6. The actual registration of the agent is made by defendant, at the request of defendant, and under the hand and seal of corporation, Taylor Wine Company, Incorporated.

Plaintiff in his brief also sets forth that the agent or vendor can (1) promote the sale of the product of defendant through the State Liquor Stores; (2) call upon retail licensees or other persons in order to promote the sale of defendant's product; (3) advertise the sale of defendant's product; (4) solicit and obtain orders from licensees or other persons for defendant's product; (5) actually place the orders for defendant's product with a State Liquor Store; (6) accept a deposit of not less than 25 percent of the price of the sale from the licensee or other person placing the order with the agent; (7) pass out samples of defendant's product; (8) shall maintain records for two years covering all operations in Pennsylvania, including salaries or commissions of all agents, expenses of agents, all promotional or advertising expenditures, special order sales and stock merchandise request.

While we do not believe that the Pennsylvania Liquor Control Board by adopting regulations for the control and sale of liquor and wine in the State of Pennsylvania can in any way affect or alter the procedure prescribed by statute for service on any person, firm or corporation, yet the activities of such agents, even though required to be performed in accordance with the rules and regulations of the Liquor Control Board, do not alter or affect the procedure prescribed by statute for service of process on a foreign unregistered corporation if the activities of the foreign corporation or its agents actually amount to doing business in this Commonwealth.

Section 1011(B) of the Business Corporation Law, added by the Act of September 26, 1951, P. L. 1475, as amended, 15 PS §2852-1011(B), provides, in part, as follows:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. On petition, alleging conduct of business within the Commonwealth by any corporation not qualified by the Secretary of the Commonwealth or having otherwise designated him as agent for the service of process, the court of the county in which the action is instituted shall authorize service to be made upon the Secretary of the Commonwealth. Service shall be made by the Sheriff of such county, by transmitting to the Secretary of the Commonwealth, and to the defendant at his last known residence or place of business, by registered mail, return receipt requested, a copy of such process, together with a copy of the petition and order of the court, properly certified as such by the prothonotary. The return receipt by the post office department shall be evidence of service under this act."

Paragraph C of the same act provides as follows:

"C. For the purposes of this act, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' "

It is admitted that Taylor Wine Company, Incorporated, is a foreign unregistered corporation.

The only question here involved, therefore, is whether or not defendant entered and was doing business in Pennsylvania under the provisions of this act.

The latest case which we have been able to find in regard to this matter is Swavely v. Vandegrift, 397 Pa. 281, also reported in 19 D. & C. 2d 153, and in 8 Bucks 208. In that case Calcinator Corporation, a manufacturing concern, incorporated in the State of Michigan, had its own plant and offices in Bay City, Mich. It marketed its product, being several models of household incinerators, through distributors located in various parts of the country. These distributors were not mere sales agents for the manufacturers and did not sell on consignment, but, on the contrary, they were separate and independent firms engaged as wholesalers not only in Calcinator Corporation products but also in the household appliance field generally. If and when their orders are accepted by Calcinator Corporation, they purchase the incinerators from the manufacturer by outright sales transactions, title passing upon delivery F.O.B. Bay City, Mich. The distributors through their own independent sales organization then resell the same to retailers of their choice and in the selection of which Calcinator Corporation has no voice or control. The retailers, in turn, make the ultimate sale and installation to the final household user with whom Calcinator Corporation has no contact whatsoever. Although retail prices are "suggested" by the manufacturer, no legally binding commitments are in effect in this connection, and, in fact, the devices retail at varying prices in different localities according to local practices and policies. No sales quotas are imposed upon the distributors by the manufacturer.

The Calcinator Corporation never had an office or usual place of business within this Commonwealth, and the person on whom service was made was not an executive officer, partner or trustee of the corporation and he was not authorized to receive service of process in its behalf. In fact, no one was authorized to accept service of process on behalf of the company in Pennsylvania. No restrictions were placed upon the distributor except that they were to devote their best efforts in the promotion of the sales of Calcinator products, maintain an inventory of the product "in accordance with the needs of the territory hereby granted"; they were not permitted to remove manufacturer's name plate or other markings from the products and the distributor was required to abide by the manufacturer's advertising program and pay part of the cost of same, also to make monthly report of sales, inventories, names of dealers and other matters as may be required from time to time, and forbidding the sale or promotion of similar products of others during the existence of the agreement.

The Calcinator Corporation also had arrangements with individuals whom it designated as "manufacturer's representatives" whereby the latter, occupying the apparent legal relationship of independent contractors, are named as the exclusive representatives of the manufacturer to survey the trade for the purpose of finding and recommending distributors for the manufacturer's consideration and extension of distributorship contracts. Such representatives have no authority to effectuate the distributor relationship, nor in any other way to obligate Calcinator Corporation whether for the sale of its product or otherwise. They do not even solicit orders from the distributors. In some cases they also represent other manufacturers in other lines of business. The representative has the further duty of providing a liaison between the manufacturer and

the distributor in formulating and carrying out promotional campaigns for Calcinator and also in advising and training the distributors, sales personnel in the technical details of product knowledge. He has no contact with retailers or the ultimate household user of the device, does not participate in actual installations, and has no power either to take orders for the product or to collect the amounts due from distributors by reason thereof.

We cannot agree with defendant that this case presents facts which are to any great extent similar to those presented in Swavely v. Vandegrift, 397 Pa. 281, supra. There, defendant had no office in Pennsylvania; it had no agents in Pennsylvania; no one employed by it solicited orders in Pennsylvania or contacted the retailers or the ultimate household consumers of its product. Both its distributors and manufacturer's representatives were independent contractors. The distributors contracts made it clear that they were not agents of the company; that they could not transact any business in the company's name and were not authorized to incur any obligations and/or liability for or against the manufacturer.

The manufacturer's representatives duties was to survey the trade for the purpose of finding and recommending distributors for the manufacturer's consideration and extension of distributor's contracts. They had no authority to effectuate the distributor relationship, nor in any other way to obligate Calcinator Corporation, whether for the sale of its products or otherwise. They did not even solicit orders from the distributors. They did provide liaison between the manufacturer and the distributor in formulating and carrying out promotional campaigns for the manufacturer and in advising and training the distributor's sales personnel in the technical details of the products.

In other words, all Calcinator Corporation did was

solicit business in Pennsylvania through independent contractors.

In the case now before us, the manufacturer did maintain an office in Pennsylvania as shown by its own application for vendor's permit and agents registration; it employed agents physically present in Pennsylvania and regularly engaged in Pennsylvania activities. These agents personally contacted retailers and customers or ultimate household users in Pennsylvania in the manufacturer's name; took orders for the manufacturer's product; collected part payment from the customer in some cases and could select retailers and customers.

In addition to these facts, we must take into consideration the Act of November 10, 1959, P. L. 1406, sec. 1, 15 PS §2852-1011, which has been set forth at length above. From the activities of defendant's agents as above set forth, we hold that defendant entered Pennsylvania by its agents and representatives and did business therein, and we hold that it did so for the purpose of realizing pecuniary benefits.

While only one sale is mentioned in the pleadings, we must, on a motion to quash the complaint, look at the evidence in a light most favorable to plaintiff and give him the benefit of all reasonable inferences therefrom. It is only reasonable to infer that defendant is in business to realize pecuniary benefits, and that his activities in Pennsylvania are for that purpose. From the number of agents employed by defendants in Pennsylvania it is only reasonable to infer that it must have made many sales in Pennsylvania, especially as many of these agents have had their registrations renewed annually.

We are also of the opinion that it would be unjust to the citizens of Pennsylvania and, therefore, against public policy, to require a citizen in circumstances such as are represented in this case, to be caused the expense

of traveling anywhere in the United States where a defendant might be situated, even to Hawaii and Alaska, for the purpose of instituting a suit to recover damages for the alleged negligence of the defendant. We also realize that it could be a hardship on a defendant to have to travel these distances to defend a suit brought against it, but it is defendant, not plaintiff, which selected Pennsylvania in which it was going to do business and, having done so, it makes itself subject to the service made in this case, if, as we hold, it is doing business here.

If a defendant decides to enter Pennsylvania for the purpose of doing business here, then any of our citizens who suffer damage by reason of this defendant's negligence should not be exposed to great inconvenience and expense to bring suit in a distant state or territory. Of course, if the corporation is not doing business in this Commonwealth as the same is defined in our statutes and cases, then it would be unfair to permit service on such corporation as made here, but in view of our conclusion that defendant in this case was doing business in Pennsylvania, we must refuse the motion to quash the service and dismiss the action.

Defendant has cited a number of cases in its brief in which the question of what is "doing business" has been passed upon. We have read these cases, and, as it appears to us, they do not all seem to be in harmony. Furthermore, some of them were decided before section C of the Act of November 10, 1959, supra, was enacted. While this act was in effect at the time of the decision in Swavely v. Vandegrift, 397 Pa. 281, the court in that case found that defendant had not entered Pennsylvania for the purpose of doing an act or a series of acts for the purpose of realizing pecuniary benefit or otherwise accomplish an object. Inasmuch as we have reached the opposite conclusion, we make the following

334

*Order*

Now, January 13, 1961, the service of the complaint made on defendant in this case is held to be good and valid; the court has jurisdiction by reason of such service; defendant's motion to quash the service of process and dismiss this action is denied and refused, and if defendant desires to file an answer to the complaint it is hereby given 20 days from the date hereof in which to do so unless notice of an appeal from this decision is filed according to law.